UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Defendant. | Civil Action No. 22-3051 (DLF) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

   Pursuant to Federal Rule of Civil Procedure 56, Defendant U.S. Department of Health and Human Services ("Defendant"), by and through undersigned counsel, respectfully moves for summary judgment. As set forth in the accompanying memorandum of points and authorities, Defendant is entitled to judgment on the complaint brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Plaintiff Judicial Watch, Inc. ("Plaintiff"). Plaintiff seeks to compel Defendant to disclose the names and titles of the National Institutes of Health ("NIH") employees who were associated with fetal tissue procurement and administering and oversight of the University of Pittsburgh grant to conduct fetal tissue research.

   Defendant has satisfied its obligations with respect to Plaintiff's FOIA requests. Defendant conducted an adequate search for responsive records, which Plaintiff does not dispute. Defendant disclosed all responsive records that were not subject to a FOIA exemption. Defendant properly withheld the names and titles of two NIH employees pursuant to the personal privacy exemption of FOIA because the privacy interest of the individuals to be protected from harassment and physical danger far outweighs the public interest in the identifying information of the individuals.

5 U.S.C. § 552(b)(6).  As there are no material facts in genuine dispute, Defendant respectfully moves for summary judgment as to all claims asserted against it.

The accompanying memorandum of points and authorities, statement of facts, and supporting declaration, along with the exhibits thereto, establish that Defendant is entitled to the relief sought.

Dated: November 6, 2023
      Washington, DC

                           Respectfully submitted,

                           MATTHEW M. GRAVES, D.C. Bar #481052
                           United States Attorney

                           BRIAN P. HUDAK
                           Chief, Civil Division

By:         /s/ *M. Jared Littman*
                             M. JARED LITTMAN
                             PA Bar #91646
                             Assistant United States Attorney
                             601 D Street, NW
                             Washington, DC 20530
                             (202) 252-2523
                             Jared.Littman@usdoj.gov

                           *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF HEALTH AND | ) |
| HUMAN SERVICES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Civil Action No. 22-3051 (DLF)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
## OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Congenital diseases of the genitourinary tract (kidneys, bladder, ureter, urethra, etc.) "are a leading cause of organ failure carrying with it an increased risk of death" and are "a growing public health burden." National Institute of Health ("NIH") RePORTER, University of Pittsburgh as the GUDMAP Tissue Hub and Collection Site, https://reporter.nih.gov/search/KxA23qy7h027yQZf2QxX0A/project-details/9177967.[1] Unfortunately, the current treatment regimen of dialysis for the kidneys and organ transplantation is invasive, imperfect, and, indeed, unsustainable, as "the demand for transplants far exceed[s] supply." *Id.* Thus, "there is an imminent need for alternate therapies," and "[a] comprehensive understanding of how the genitourinary tract develops in utero is necessary to effectively develop novel therapies to replace or repair injured tissue." *Id.*

---

[1] The Court may take judicial notice of information posted on official public websites of government agencies, as the linked documents in this motion are. *See, e.g., Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (citing *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Hum. Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.") (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)))).

The GenitoUrinary Development Molecular Anatomy Project ("Anatomy Project"), a consortium of laboratories funded until recently by NIH, is at the forefront of this research. Gudmap.org, About GUDMAP, https://www.gudmap.org/about/.    The Anatomy Project's research, however, has been "hampered by the lack of a central hub for the procurement, quality control and distribution of human genitourinary samples."   NIH RePORTER, University of Pittsburgh as the GUDMAP Tissue Hub and Collection Site, https://reporter.nih.gov/search/KxA23qy7h027yQZf2QxX0A/project-details/9177967.   The Health Sciences Tissue Bank at the University of Pittsburgh has the capabilities and experience to provide these vital fetal tissue samples.  *Id.*   In 2016, NIH (specifically, the National Institute of Diabetes and Digestive and Kidney Diseases, a subcomponent of NIH) entered into an agreement with University of Pittsburgh to provide fetal tissue to the Anatomy Project.  *Id.*

Research using human fetal tissue—tissue obtained from a dead human embryo or fetus—presents "scientific and ethical challenges."  NIH Grants Policy Statement § 4.1.14, Human Fetal Tissue Research, https://grants.nih.gov/grants/policy/nihgps/html5/section_4/4.1.14_human_fetal_tissue_research.htm.  The use of human fetal tissue for research is "sensitive" and has "ethical implications."  NIH Office of Intramural Research, Sourcebook, Policies on the Acquisition and Use of Human Fetal Tissue (HFT) for Research Purposes in the Intramural Research Program at NIH, https://oir.nih.gov/sourcebook/ethical-conduct/special-research-considerations/policies-procedures-use-human-fetal-tissue-hft-research-purposes-intramural/policies.  Indeed, referring to human fetal tissue research, the President of Plaintiff Judicial Watch, Inc., offered his perspective: "The Biden administration turned the spigot back on for taxpayer funding of this barbarism, and we want the details."  Judicial Watch.Org, Judicial Watch Sues for NIH Communications on Fetal Organ Harvesting, https://www.judicialwatch.org/nih-fetal-organ-harvesting/ (Jan.10, 2023).

Plaintiff Judicial Watch, Inc. submitted to NIH a FOIA request from Plaintiff dated July 15, 2022, seeking "All communications [from January 1, 2021, to July 15, 2022] concerning human fetal tissue collection between the Office of Extramural Research and any of the following entities: (1) University of Pittsburgh, (2) University of Pittsburgh Medical Center, (3) the National Abortion Federation, or (4) any Planned Parenthood entity." Ex. 1, Garcia-Malene Decl. ¶¶ 5-6. The Office of Extramural Research is an office within the NIH Office of the Director. NIH, Grants & Funding, About the Office of Extramural Research (OER) at NIH, https://grants.nih.gov/aboutoer/intro2oer.htm. NIH's Office of Extramural Research "provides the corporate framework for NIH research administration, ensuring scientific integrity, public accountability, and effective stewardship of the NIH extramural research portfolio." *Id.* NIH located eighty-six pages of responsive records and made the first and final production on February 28, 2023, withholding portions of the records pursuant to FOIA Exemptions 4 (trade secrets and certain commercial or financial information), 6 (personal privacy information), and 7(C) (personal privacy information compiled for law enforcement purposes). *Id.* ¶¶ 8-9.

Among other redactions, NIH redacted names and titles of certain NIH employees who signed a letter addressed to University of Pittsburgh officials pertaining to the human fetal tissue research grant. *Id.* ¶¶ 12, 14. NIH disclosed the full body of the letter, which discusses four statements in University of Pittsburgh's final research performance progress report that "appear incorrect and may need amendment" involving the scope and success of the project. Ex. 3. The only remaining dispute involves Plaintiff's quest to compel Defendant to disclose the names and titles of two NIH employees who signed that letter and were associated with fetal tissue procurement and administration of the University of Pittsburgh grant to conduct fetal tissue research—taxpayer-funded "barbarism," as Judicial Watch refers to it.

Defendant properly withheld that information under Exemption 6.[2]  The privacy interest of the individuals to be protected from harassment and physical danger if their identities were disclosed far outweighs the public interest in the identifying information of the individuals. 5 U.S.C. § 552(b)(6).  Importantly, the only relevant public interest under Exemption 6 is whether the disclosure would reveal something about the workings of the Government; and here Plaintiff does not seek disclosure about how the grants were administered, the amount of funding NIH provided, how the research is performed, whether state or federal laws were followed, or the like. As noted above, Defendant disclosed the full body of the letter.  Instead, Plaintiff curiously wants Defendant to disclose the names and titles of the NIH employees who signed the letter, which is outside of the public interest scope of FOIA and, indeed, the disclosure of which can be used for only one contemplated purpose—intimidation and harassment.  Such risks are palpable, as Plaintiff is committed to "disseminat[ing] its findings and the records to the American public."  Compl., ECF No. 1 ¶ 3.

As Judge Howell recently held in a case where a FOIA requester sought similar identifying information of NIH employees involved in the fetal tissue research agreement at issue here, the names and titles must be protected.  *Ctr. for Med. Progress v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-0642 (BAH), --- F. Supp. 3d ----, 2023 WL 5007881 (D.D.C. Aug. 7, 2023). Accordingly, the Court should grant Defendant's Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact

---

[2]     Plaintiff has abandoned any challenge to other withholdings, including those made under Exemptions 4 and 7(C), and does not dispute the adequacy of NIH's search.  *See* Def.'s Stmt. of Material Facts ¶ 11, Ex. 3

is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

"FOIA cases are typically and appropriately decided on motions for summary judgment." *See, e.g.*, *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).  A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, that it has conducted an adequate search for responsive records (which is not in dispute in this case), and that each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure.  *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980).  To meet its burden, a defendant may rely on reasonably detailed, non-conclusory declarations.  *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).  If a plaintiff does not provide evidence that an agency has acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations, provided that the declarations are not conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *Rojas-Vega v. Immigr. & Customs Enf't*, 302 F. Supp. 3d 300, 306 (D.D.C. 2018) (internal quotation marks omitted).

## ARGUMENT

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  Exemption 6 exempts

"not just files, but also bits of personal information, such as names and addresses, the release of which could 'create[] a palpable threat to privacy.'" *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Carter v. Dep't of Com.*, 830 F.2d 388, 391 (D.C. Cir. 1987)). Here, it is undisputed that the names and titles of the NIH employees are "bits of personal information" that are eligible for protection under Exemption 6.

Next, to determine whether Defendant properly withheld the identity of the NIH employees, the Court "must balance the private interest involved (namely, 'the individual's right of privacy') against the public interest (namely, 'the basic purpose of the Freedom of Information Act,' which is 'to open agency action to the light of public scrutiny')." *Judicial Watch*, 449 F.3d at 153 (internal quotation marks omitted). In undertaking this balancing, the Court first determines whether disclosure of the NIH employees' names and titles "would compromise a substantial, as opposed to a *de minimis*, privacy interest." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). "The threshold requirement of a substantial privacy interest 'is not very demanding.'" *Niskanen Ctr. v. Fed. Energy Reg. Comm'n*, 20 F.4th 787, 791 (D.C. Cir. 2021) (quoting *Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008)). "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005).

If a more than *de minimis* privacy interest is at stake, then the Court must "weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Horner*, 879 F.2d at 874. But not all public interests are relevant to the Exemption 6 balancing test. "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's

performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) (quoting *Dep't of Def. v. Fed. Lab. Rel. Auth.*, 510 U.S. 487, 497 (1994)); *see also Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (holding that only "[o]fficial information that sheds light on an agency's performance of its statutory duties" merits disclosure under FOIA). The balancing inquiry is further informed by considering the withheld information's "incremental value" to shedding light on agency action. *See Schrecker v. Dep't of Just.*, 349 F.3d 657, 661 (D.C. Cir. 2003).

Defendant has satisfied the threshold step of establishing that disclosure of the NIH employees' names and titles would compromise a more than *de minimis* privacy interest, and indeed, would compromise a substantial privacy interest that far outweighs the minimal (if any) public interest in release of the personal information. Individuals have "the right to control information related to themselves and to avoid disclosures that 'could conceivably subject them to annoyance or harassment in either their official or private lives." *Lesar v. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980). "The D.C. Circuit 'has been particularly concerned when the information may be used for solicitation purposes' or 'invite[] unwanted intrusions,'" *Humane Soc'y of the U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 45 (D.D.C. 2019) (quoting *Lepelletier*, 164 F.3d at 47). There is a substantial privacy interest in personal information that could subject individuals to "injury and embarrassment"; an individual's privacy interest in "avoiding physical danger" places the agency in a "strong position" for withholding identifying information. *Judicial Watch*, 449 F.3d at 153.

Here, each of the challenged redactions of names and/or titles has been applied to an NIH employee associated with fetal tissue procurement and the University of Pittsburgh grant. *Garcia-Malene* Decl. ¶ 18. NIH and other agencies withhold names of agency and grant staff involved in

sensitive research like animal and fetal tissue research "after hard lessons of ongoing, unrelenting harassment of the staff by public interest organizations and their supporters." *Id.* ¶ 19. Indeed, "[f]or years, NIH colleagues have received threats of violence to their person on issues generating similar passions as those relating to fetal tissue. Scientists, leadership and staff in any way associated with animal testing or the pandemic are regularly regaled with abusive communications and death threats." *Id.* ¶ 20. "Sometimes, this harassment reaches their neighborhood, all the way to their doorsteps." *Id.* ¶ 21. Dr. Fauci, for example, was assigned a security detail out of concern for his physical safety, ABC News, Fauci given security detail after threats, https://abcnews.go.com/Politics/fauci-security-detail-threats-source/story?id=69933965 (Apr. 20, 2020), and the Department of Justice has created the National Task Force on Violence Against Reproductive Health Care Providers, https://www.justice.gov/crt/national-task-force-violence-against-reproductive-health-care-providers. *See also* Justice.gov, Recent Cases on Violence Against Reproductive Health Care Providers, https://www.justice.gov/crt/recent-cases-violence-against-reproductive-health-care-providers (updated May 20, 2023) (listing federal prosecutions of recent cases of violence and other conduct directed at reproductive health care providers).

In addition, "news reports abound on the violence (including murders) committed against medical staff who work with fetal tissue." Garcia-Malene Decl. ¶ 21. The Center for Medical Progress, an organization at the forefront of challenges to University of Pittsburgh "barbaric experiments carried out on aborted human infants," routinely posts harassing information on its website. *Id.*; *see* The Center for Medical Progress, Fetal Experimentation at the University of Pittsburgh and Planned Parenthood, https://www.centerformedicalprogress.org/human-capital/fetal-experimentation-at-the-university-of-pittsburgh-and-planned-parenthood/. In October 2022, the United States Court of Appeals for the Ninth Circuit upheld the judgment that

Center for Medical Progress had violated the civil Racketeer Influenced and Corrupt Organizations Act and other laws for illegally infiltrating Planned Parenthood, secretly recording conferences, clinics, and employees, then posting those videos on its website.  Garcia-Malene Decl. ¶ 21; *see Planned Parenthood Fed'n of Am. v. Newman*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022).

The NIH employees whose names have been withheld here are involved in similarly "controversial" work.  Garcia-Malene Decl. ¶ 21.  Defendant thus has established that the NIH employees have a substantial privacy interest—to be free from harassment and danger of personal physical harm—in not having their identities disclosed.[3]

On the other hand, there is minimal public interest (at most) in disclosing the identifying information of these individuals because disclosure would not shed light on the government's exercise of its statutory duties or what the government is up to.  "The public does not learn anything about 'what [its] government is up to' by gaining access to 'information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct.'"  *Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 290 (D.D.C. 2020) (quoting *Reps. Comm.*, 489 U.S. at 773) (upholding SEC's withholding of identifying information of SEC staff); *see also Carlborg v. Dep't of Navy*, Civ. A. No. 18-1881 (DLF), 2020 WL 4583270, at *8 (D.D.C. Aug. 10, 2020) (Department of Defense personnel's privacy interest in "keeping their names and personal identifying information from being disclosed" outweighed "minimal" public interest as names and identifying information reveal little or nothing about what the

---

[3]    For these same reasons, Defendant has also established that harm from disclosure of the identifies of the NIH employees is "reasonably foreseeable."  *See* 5 U.S.C. § 552(a)(8)(A) (permitting an agency to withhold information pursuant to a valid FOIA exemption if "the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption").

Government is up to).  Given that the only public interest relevant for purposes of Exemption 6 is one that focuses on "the citizens' right to be informed about what their government is up to," that interest cannot overcome the NIH employees' interests here because the disclosure of the names will "reveal[] little or nothing about an agency's own conduct."  *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492-93 (D.C. Cir. 1993) (quoting *Reps. Comm.*, 489 U.S. at 773).

"While there may be some de minimus public interest in the names of individuals who administer NIH grants, the names of the employees do not reveal how the grants themselves were administered, the amount of funding NIH provided, how the research is performed or whether state or federal laws were followed."  Garcia-Malene Decl. ¶ 24.  "Because there is such a clear threat of violence or harassment for employees who are associated with fetal tissue research and the release of the names would not shed any significant light on how NIH manages and administers the grant, [Defendant] determined that the privacy interests of the employees in not having their names and titles associated with fetal tissue research outweighs any de minimus public interest in this information and therefore, should be withheld under Exemption 6."  *Id.* ¶ 25.

Notably, Defendant has already released the grant application, shedding light on how NIH spends taxpayer money and with whom NIH partners for research involving fetal tissue, as well as whether federal or state laws are being followed.  NIH RePORTER, University of Pittsburgh as the GUDMAP Tissue Hub and Collection Site, https://reporter.nih.gov/ search/KxA23qy7h027yQZf2QxX0A/project-details/9177967.  Defendant has also released the identity of the University of Pittsburgh project leader and NIH program official involved in administering the grant.  *Id.*  Indeed, NIH disclosed the full text of the body of the letter on which the names in dispute appear.  Garcia-Malene Decl. ¶ 14.

In light of the strong privacy interests the affected individuals have in "avoiding physical danger" and harassment, *Judicial Watch*, 449 F.3d at 153, such interests clearly outweigh the minimal public benefit, if any, that can be gained from revealing their identities. In light of the information that Defendant has disclosed, including the full content of the letter itself, the "incremental value" of revealing the identities of the signatories is virtually non-existent. *Schrecker*, 349 F.3d at 661. Disclosure "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and therefore Defendant properly withheld the identifying information.

In an analogous case, the D.C. Circuit flatly rejected Plaintiff Judicial Watch's attempt to compel disclosure of the names of FDA personnel who worked on the approval of the abortion pill mifepristone. *Judicial Watch*, 449 F.3d at 152-53. The D.C. Circuit found that the privacy interest of the individuals in avoiding injury and embarrassment outweighed the opposing public interest in knowing the identifying information, which in fact was "not immediately apparent." *Id.* at 153. The D.C. Circuit rejected as a non sequitur Judicial Watch's argument that "the public needs the information because mifepristone may pose dangerous health risks to women who use it." *Id.* The Court explained, "Even if mifepristone has significant health risks, these names and addresses prove nothing about the nature or even the existence of the risks. In the absence of a legitimate public interest, the private interest in avoiding harassment or violence tilts the scales." *Id.*

Further, in a remarkably similar case to the one now before the Court, a FOIA requestor sought the identities of NIH officials involved in the same fetal tissue research grant with the University of Pittsburgh at issue here, and Judge Howell unequivocally held that the privacy interests at stake outweighed the public interest. *Ctr. for Med. Progress*, 2023 WL 5007881,

at *3–6.[4]  This Court should side with Judge Howell's well-reasoned and thoughtful decision.  In *Center for Medical Progress*, the FOIA requestor sought the disclosure of the same kind of information withheld here—the names of NIH staff administering the grant to the University of Pittsburgh to supply fetal tissue to the Anatomy Project.  *Id.* at *1.  Judge Howell rejected the plaintiff's argument that revealing the identity of an NIH employee would "further[] [the] aim" of revealing "potential government wrongdoing."  *Id.* at *6.  Judge Howell distinguished material relevant to plaintiff's "attempt to unravel a supposed web of government noncompliance"—"the *actions* of individuals"—from material that is not relevant—the names of those individuals.  *Id.* (emphasis in original).  Judge Howell rejected Plaintiff's argument for disclosure because the "great privacy interest" in protecting the NIH officials' identity from "the real risk of threats, harassment, and violence" far outweighed the "extremely limited public interest" in the names of the individuals.  *Id.* at *5-6.  Judge Howell granted summary judgment in favor of the Government.  *Id.* at *7.

For the same reasons, because the privacy interests of the individuals to be free from harassment and danger far outweigh the public interest in their specific identities, the Court should grant Defendant's motion for summary judgment and enter judgment in its favor.

---

[4]    On October 6, 2023, Plaintiff appealed this decision to the D.C. Circuit (No. 23-5224).  The appeal is pending.  Plaintiff Judicial Watch represents Center for Medical Progress.  *See Ctr. for Med. Progress*, 2023 WL 5007881, at *1.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant

Defendant's Motion for Summary Judgment.

Dated:  November 6, 2023
            Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:            /s/ *M. Jared Littman*

M. JARED LITTMAN, PA Bar #91646
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2523
Jared.Littman@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

        Plaintiff,

    v.

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

        Defendant.

Civil Action No. 22-3051 (DLF)

## **[PROPOSED] ORDER**

UPON CONSIDERATION of Defendant's Motion for Summary Judgment, Plaintiff's opposition, cross-motion for summary judgment, and the entire record, it is hereby

ORDERED that Defendant's Motion for Summary Judgment is GRANTED; it is further

ORDERED that Plaintiff's cross-motion for summary judgment is DENIED; and it is further

ORDERED that summary judgment is entered for Defendant.

SO ORDERED


Dated: _____

          _____
          DABNEY L. FRIEDRICH
          United States District Judge