UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Defendant. | Civil Action No. 22-3051 (DLF) |

**DEFENDANT'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT AND
CROSS-OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant Department of Health and Human Services respectfully submits this reply in support of its motion for summary judgment, ECF No. 16, Def.'s Mot., and in opposition to Plaintiff's Cross Motion for Summary Judgment, ECF No. 18, Pl.'s Cross Mot.

Plaintiff's argument on both sides of the Exemption 6 public interest vs. private interest balancing test are unpersuasive.  As Defendant explained in its opening brief, it properly withheld the names and titles of two National Institutes of Health ("NIH") employees pursuant to the personal privacy exemption of FOIA because the privacy interest of the individuals to be protected from harassment and physical danger far outweighs the public interest in the identifying information of the individuals, the disclosure of which would say nothing about what the Government is "up to."  *See* Def.'s Mot.; *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999)

I.     **PRIVACY INTERESTS OF NIH EMPLOYEES TO BE PROTECTED FROM HARASSMENT AND PHYSICAL DANGER.**

Plaintiff boldly contends that Defendant has not satisfied even the threshold requirement of showing that the NIH employees have a "substantial privacy interest" in the release of their

names and titles, and therefore, the Court does not even have to assess Plaintiff's asserted public interest. Pl.'s Cross Mot. at 6-7 ("Because Defendant cannot prove an essential element of Exemption 6—namely, that a substantial privacy interest exists, summary judgment cannot be granted in the agency's favor."). The Court should reject Plaintiff's thinly veiled attempt to shield the Court from assessing the resounding public interest weakness in Plaintiff's case.

Plaintiff miscomprehends what "substantial" means in this context. "Substantial" means only more than a *de minimis* privacy interest. *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). "The threshold requirement of a substantial privacy interest 'is not very demanding.'" *Niskanen Ctr. v. Fed. Energy Reg. Comm'n*, 20 F.4th 787, 791 (D.C. Cir. 2021) (quoting *Multi AG Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008)). "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005).

The D.C. Circuit has held that individuals have "the right to control information related to themselves"—like the names at issue here—"and to avoid disclosures that could conceivably subject them to annoyance or harassment in either their official or private lives." *Lesar v. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980). "The D.C. Circuit 'has been particularly concerned when the information may be used for solicitation purposes' or 'invite[] unwanted intrusions,'" *Humane Soc'y of the U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 45 (D.D.C. 2019) (quoting *Lepelletier*, 164 F.3d at 47). Thus, the NIH employees' names, at the very least, satisfy the threshold requirement of raising a "substantial" privacy interest. *E.g.*, *Lepelletier*, 164 F.3d at 47; *Horner*, 879 F.2d at 875; *Lesar*, 636 F.2d at 487.

Not only is this information eligible for protection because the privacy interest is "substantial," but as Defendant explained in its opening brief, the privacy interests of the

individuals to be protected from harassment and physical danger is gravely important.  *See* Def.'s Mot. at 9-11.  Plaintiff opposes by launching unwarranted attacks on the supporting declaration of Gorka Garcia-Malene, NIH's FOIA Officer.  Pl.'s Cross Mot. at 7-1; *see* ECF No. 16-2, Garcia-Malene Decl.  The Court should reject Plaintiff's arguments.

At the outset, the Court must presume that agency affidavits are submitted in good faith. *See In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020).  Under that presumption, such affidavits are enough to satisfy the factual component of an agency's request for summary judgment unless the affidavit is "contradicted by contrary evidence in the record or by evidence of the agency's bad faith." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).

Plaintiff falls far short of satisfying this standard.  Plaintiff's central attack on Mr. Garcia-Malene's declaration is that it is too big of a leap from the documented cases of harassment and violence against abortion clinics and other sensitive medical research involving animals and the pandemic to similarly sensitive research involving fetal tissue.  Pl.'s Cross Mot. at 7.  But the purported leap between aborted fetuses and fetal tissue research is no leap at all.  Human fetal tissue used for research is "obtained from a dead human embryo or fetus after a spontaneous or induced abortion or stillbirth."  NIH Grants Policy Statement § 4.1.14, Human Fetal Tissue Research, https://grants.nih.gov/grants/policy/nihgps/html5/section_4/4.1.14_human_fetal_tissue_research.htm.  Fetal tissue research and these sources of tissue are inextricably intertwined, and thus, documented violence and harassment in the abortion arena provide palpable examples of violence and harassment in the fetal tissue arena.

In any event, under the law, Plaintiff is wrong to suggest that Defendant must set forth an example of an identical situation where someone was harassed or hurt to establish a legitimate privacy interest.  Such a rule would be perverse and downright dangerous.  Should NIH have to

wait for one its employees involved in fetal tissue research to be subjected to acts of harassment or violence before it can advance Exemption 6 protections?  As the D.C. Circuit has held, the answer is no—individuals have "the right to control information related to themselves and to avoid disclosures that could conceivably subject them to annoyance or harassment."  *Lesar*, 636 F.2d at 487; *see also Insider Inc. v. Gen. Servs. Admin.*, --- F.4th ---- , 2024 WL 649240, at *2 (D.C. Cir. Feb. 16, 2024) (holding that individuals have a "bolstered" privacy interest in protecting their names where disclosure "'might invite unwanted intrusions'") (quoting *Niskanen Ctr.*, 20 F.4th at 791).

In addition to attacking the content of Mr. Garcia-Malene's declaration, Plaintiff also attacks the declaration for relying on "hearsay evidence."  Pl.'s Cross Mot. at 10-11.  Plaintiff misunderstands the role of declarations in FOIA cases.  In the FOIA context, a declarant satisfies the personal-knowledge requirement of Federal Rule of Civil Procedure 56(c) "if he has a general familiarity with the responsive records and procedures used to identify those records." *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008). Thus, it is well-settled that "FOIA declarants may include statements in their declarations based on information they have obtained in the course of their official duties." *Id.* at 138-39; *see also Inst. for Policy Studies v. CIA*, 885 F. Supp. 2d 120, 134 (D.D.C. 2012) ("A declarant is deemed to have personal knowledge if he has a general familiarity with the responsive records and procedures used to identify those records and thus is not required to independently verify the information contained in each responsive record.").

For these reasons, the D.C. Circuit has explained that the person who coordinates and oversees the response to a FOIA request is "the most appropriate person to provide a comprehensive affidavit," even if that affiant relies on "partly second-hand" information.

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  Courts within this District routinely affirm that a declaration of an agency official who is knowledgeable about the agency's FOIA practices and familiar with the documents in question has been found to satisfy the personal knowledge requirement for summary judgment declarations, without running afoul of hearsay rules. *See, e.g.*, *Energy Policy Advocates v. EPA*, Civ. A. No. 22-298 (TJK), 2023 WL 6388879, at *5 n.9 (D.D.C. Sept. 29, 2023) (rejecting same hearsay argument that Plaintiff makes here because "declarant's testimony is based upon information gleaned from personal familiarity with agency practices or from information relayed by other agency personnel, not one where the declarant relies on out-of-court statements by private third parties") (internal quotation marks omitted); *ACLU v. Fed. Bureau of Prisons*, Civ. A. No. 20-2320 (RBW), 2022 WL 1262112, at *5 (D.D.C. Apr. 28, 2022) ("the information a declarant provides in a FOIA matter need not be independently corroborated in order to survive a hearsay objection"); *Majuc v. Dep't of Just.*, Civ. A. No. 18-0566 (APM), 2022 WL 266700, at *3 (D.D.C. Jan. 28, 2022) ("Courts routinely have held that declarants in FOIA cases can rely on information obtained through inter-agency consultations without running afoul of hearsay rules."); *Schrecker v. Dep't of Just.*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002) (rejecting argument that affidavit was hearsay because affiant was "responsible for the FBI's compliance with FOIA litigation and is therefore not merely speculating about the FBI activities"), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003).

Here, Mr. Garcia-Malene averred that he made the statements in his declaration "on the basis of personal knowledge, as well as on information acquired by [him] in the course of performing [his] official duties" as NIH's FOIA officer."  Garcia-Malene Decl. ¶ 3. Relying on those sources of information, Mr. Garcia-Malene explained NIH's processing of Plaintiff's FOIA request and withholdings pursuant to Exemption 6.  *See generally id.*  Mr. Garcia-Malene's

declaration thus does not run afoul of Rule 56 or the hearsay rules because Mr. Garcia-Malene made his declaration based on permissible sources of information.

The cases that Plaintiff cites are unconvincing. Pl.'s Cross. Mot. at 10-11. In *White Coat Waste Project v. Dep't of Veteran Aff.*, 404 F. Supp. 3d 87, 106 (D.D.C. 2019), the court did not decide the hearsay challenge because the defendant did not respond to the argument, and thus, the court treated it as conceded. In *Human Society*, 386 F. Supp. 3d at 44, the Court explained that "courts may consider hearsay in FOIA cases when assessing the adequacy of the agency's search" and "FOIA declarants may rely on information obtained through inter-agency consultation," but the case was distinguishable because the declarant "rel[ied] on out-of-court statements from private third-parties to justify [the] agency's withholding." Mr. Garcia-Malene did not rely on third-party statements, but rather, he relied on his own personal knowledge and information obtained through inter-agency consultation. There are no hearsay problems in this case.

## II.    DISCLOSURE OF THE NAMES OF THE NIH EMPLOYEES WOULD SAY NOTHING ABOUT WHAT THE GOVERNMENT IS UP TO.

On the public interest side of the scale, after over fourteen months of litigating this case in federal court, Plaintiff is still unable to show how disclosure of the NIH employee's names would reveal anything about the workings of the Government, which is the only relevant public interest under FOIA. Importantly, Plaintiff does not seek disclosure about how the grants were administered, the amount of funding NIH provided, how the research is performed, whether state or federal laws were followed, or the like. Indeed, Defendant disclosed the full body of the letter on which the names of the NIH employees appear. In *Insider*, the D.C. Circuit recently reiterated that the court must consider the "'incremental value'" of releasing names "'given the information already disclosed,'" and here, the "incremental value," which is nominal at most, does not

outweigh the individuals' significant privacy interests. *Insider*, 2024 WL 649240, at \*4 (quoting

*Am. Immigr. Lawyers v. Exec. Off. for Immigr. Rev.*, 830 F.3d 667, 674 (D.C. Cir. 2016)).

Plaintiff argues that the University of Pittsburgh may have broken laws and proffers

questions that Plaintiff would like to ask the NIH employees about University of Pittsburgh's

compliance with the grant.  Pl.'s Cross Mot. at 12-13.  This argument falls flat because the names

would not allow Plaintiff to "learn something directly" about the workings of the Government.

*Horner*, 879 F.2d at 879.  In other words, Plaintiff has not established an "appropriate nexus"

between the information sought (the names) and the asserted public interests (University of

Pittsburgh's grant compliance and accusations regarding lawfulness of conduct).  *See Seized Prop.*

*Recovery, Corp. v. Customs & Border Prot.*, 502 F. Supp. 2d 50, 59–60 (D.D.C. 2007) (holding

that disclosure of individual names and addresses lacks an "appropriate nexus" to the asserted

public interest of shedding light on agency performance of its duties).  Simply put, FOIA does not

encompass the "derivative theory of public interest" that Plaintiff advances here and, for this

reason, Plaintiff's asserted public interest in the individuals' names and titles should be rejected.

*See Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 87 (D.D.C. 2003) (holding that the "link between

the request [for identifying information on witness statements] and the potential illumination of

agency action" was "too attenuated").  At most, rife with speculation, Plaintiff purports to have

"piece[d] together a scenario" showing University of Pittsburgh's failure to comply with fetal

tissue procurement practices.  Pl.'s Cross Mot. at 12.  The fact that NIH employees "may have

information" relevant to Plaintiff's conjecture about a non-governmental entity's possible

transgressions does not outweigh the significant invasion of privacy that would accompany

disclosure of the NIH employee's names. *Insider Inc.*, 2024 WL 649240, at \*4.

Notably, in Defendant's opening brief, Defendant explained why the D.C. Circuit's decision in *Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006), governed here. Def.'s Mot. at 11. In that case, the D.C. Circuit flatly rejected Plaintiff Judicial Watch's attempt to compel disclosure of the names of FDA personnel who worked on the approval of the abortion pill mifepristone. *Jud. Watch*, 449 F.3d at 152-53. The D.C. Circuit found that the privacy interest of the individuals in avoiding injury and embarrassment outweighed the opposing public interest in knowing the identifying information, which in fact was "not immediately apparent." *Id.* at 153. The D.C. Circuit rejected as a non sequitur Judicial Watch's argument that "the public needs the information because mifepristone may pose dangerous health risks to women who use it." *Id.* The Court explained, "Even if mifepristone has significant health risks, these names and addresses prove nothing about the nature or even the existence of the risks. In the absence of a legitimate public interest, the private interest in avoiding harassment or violence tilts the scales." *Id.* The same logic applies here, yet Plaintiff's brief ignores this D.C. Circuit decision.

Likewise, Plaintiff seeks to diminish the value of Judge Howell's well-reasoned and thoughtful decision in a remarkably similar case in which the plaintiff sought the identities of NIH officials involved in the same fetal tissue research grant with the University of Pittsburgh at issue here because (1) that decision is on appeal, and (2) the "subject matter of the records" are "similar" but not "the same." Pl.'s Cross Mot. at 12 n.13; *see* Def.'s Mot. at 11-12, *Ctr. for Med. Progress v. Dep't of Health & Hum. Servs.*, Civ. A. No. 21-0642 (BAH), --- F. Supp. 3d ----, 2023 WL 5007881 (D.D.C. Aug. 7, 2023). But Plaintiff's appeal does not discount the informative value of Judge Howell's decision, nor does the fact that the records are not exactly "the same." The point is that Judge Howell rejected the plaintiff's argument that revealing the identity of an NIH employee would "further[] [the] aim" of revealing "potential government wrongdoing." *Id.* at \*6.

Judge Howell distinguished material relevant to plaintiff's "attempt to unravel a supposed web of government noncompliance"—"the *actions* of individuals"—from material that is not relevant— the names of those individuals. *Id.* (emphasis in original).  Judge Howell rejected Plaintiff's argument for disclosure because the "great privacy interest" in protecting the NIH officials' identity from "the real risk of threats, harassment, and violence" far outweighed the "extremely limited public interest" in the names of the individuals. *Id.* at \*5-6.  While this Court is not bound by Judge Howell's decision, her decision is certainly instructive.

Discovery is not warranted here.  Pl.'s Cross-Mot. at 13.  "[D]iscovery in a FOIA case is rare" and courts should generally order it only "where there is evidence . . . that the agency acted in bad faith[.]"  *Clinton*, 973 F.3d at 113 (internal quotation marks omitted).  Discovery is not warranted "when it appears that discovery would only . . . afford [the plaintiff] an opportunity to pursue a bare hope of falling upon something that might impugn the affidavits."  *Military Audit Proj. v. Casey*, 656 F.2d 724, 751-52 (D.C. Cir. 1981) (affirming discovery denial where plaintiffs failed to raise "substantial questions concerning the substantive content of the [defendants'] affidavits").  Here, Plaintiff does not allege bad faith, let alone provide evidence of bad faith.

Considering the strong privacy interests the affected individuals have in "avoiding physical danger" and harassment, *Jud. Watch*, 449 F.3d at 153, such interests clearly outweigh the minimal public benefit, if any, that can be gained from revealing their identities.  Disclosure "would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and therefore Defendant properly withheld the identifying information.

\*   \*   \*

- 9 -

## CONCLUSION

The Court should grant Defendant's motion for summary judgment, deny Plaintiff's cross-

motion, and enter judgment in Defendant's favor.

Dated: February 23, 2024
      Washington, DC

                      Respectfully submitted,

                      MATTHEW M. GRAVES, D.C. Bar #481052
                      United States Attorney

                      BRIAN P. HUDAK
                      Chief, Civil Division

                      By:         /s/ *M. Jared Littman*
                        M. JARED LITTMAN, PA Bar #91646
                        Assistant United States Attorney
                        601 D Street, NW
                        Washington, DC 20530
                        (202) 252-2523
                        Jared.Littman@usdoj.gov

                      *Attorneys for the United States of America*