UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH AND HUMAN SERVICES,<br><br>*Defendant*. | No. 22-cv-3051 (DLF) |

## MEMORANDUM OPINION

Plaintiff Judicial Watch, Inc., brings this lawsuit against the United States Department of Health and Human Services ("HHS") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for failing to disclose the names and titles of two agency employees associated with a research grant involving the use of human fetal tissue. Before the Court is HHS's Motion for Summary Judgment, Dkt. 16, and Judicial Watch's Cross-Motion for Summary Judgment, Dkt. 18. For the reasons that follow, the Court will grant HHS's motion and deny Judicial Watch's cross-motion.

I.      BACKGROUND

HHS, through the National Institute of Health ("NIH"), has funded research into congenital diseases of the genitourinary tract involving the use of human fetal tissue samples. NIH provided grants to the GenitoUrinary Development Molecular Anatomy Project ("GUDMAP"), a consortium of private laboratories performing genitourinary research. *See* NIH REPORTER, *University of Pittsburgh as the GUDMAP Tissue Hub and Collection Site*, https://reporter.nih.gov/search/KxA23qy7h027yQZf2QxX0A/project-details/9177967. With

funding from the GUDMAP grants, NIH entered into an agreement with the University of Pittsburgh to provide human fetal tissue samples to the GUDMAP Project.  *Id.*

Judicial Watch is a not-for-profit organization that seeks to promote "transparency, integrity, and accountability" in government by requesting records from federal agencies and "disseminat[ing] its findings and the records to the American public."  Compl. ¶ 3, Dkt. 1.  In August 2021, Judicial Watch obtained and publicly released evidence of allegedly questionable fetal tissue procurement practices at the University of Pittsburgh, through a FOIA request separate from this action.  *See* JUDICIAL WATCH, *New HHS Documents Reveal Millions in Federal Funding for University of Pittsburgh Human Fetal Organ Harvesting Project Including Viable and Full-term Babies* (Aug. 3, 2021), https://www.judicialwatch.org/hhs-documents-organ-harvesting/.

In September 2021, following widespread media coverage of the release, NIH officials reached out to University of Pittsburgh officials to address public concerns about the university's procurement practices.  *See* Decl. of Liberto ¶¶ 2–3, Dkt. 18-1.  Officials discussed problems with a Progress Report submitted by GUDMAP Principal Investigator Dr. Dhir.  *See id.* ¶ 5 & Ex. 4.  The Progress Report was intended to document Dr. Dhir's accomplishments and compliance with terms of his NIH grant, but the report contained "apparent inconsistencies."  Letter to Dr. Dhir at 2, Dkt. 16-5; *see* NIH, GRANTS & FUNDING, *Research Performance Progress Report (RPPR)*, https://grants.nih.gov/grants/rppr/index.htm.  NIH sent a letter to Dr. Dhir concerning the problematic report ("Dhir Letter"), and it instructed him to submit "an appropriately revised [report] addressing the apparent inconsistencies."  Dhir. Letter at 2.  The Dhir Letter was signed by two NIH employees, whose identities are at the heart of this dispute.  *Id.* at 2.

Judicial Watch filed the FOIA request underlying this action on July 15, 2022.  *See* Def.'s Material Facts ¶ 2, Dkt. 16-1.  The request was directed to NIH and it sought records of "[a]ll

communications concerning human fetal tissue collection," between NIH's Office of Extramural Research and the University of Pittsburgh.  *See* Decl. of Garcia-Malene ¶¶ 5-6, Dkt. 16-2.  NIH initially failed to respond to the request, Def.'s Material Facts ¶ 4, so Judicial Watch filed suit on October 7, 2022, *see* Compl. at 1.  On February 28, 2023, NIH made its first and final production in the form of 86 pages of redacted responsive records, including the Dhir Letter.  *See* Def.'s Material Facts ¶¶ 5, 11.  However, NIH redacted the names and titles of the two NIH employees who had signed the Dhir Letter under Exemption 6 of FOIA.  *Id*. ¶ 11; *see* 5 U.S.C. § 552(b)(6) (providing that disclosure does not apply to "personnel . . . and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy").  Judicial Watch now challenges the redaction of those identities, and it seeks additional discovery.

## II.    LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  When an agency moves for summary judgment in a FOIA case, the Court views all facts and inferences in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA.  *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).  To prevail, the agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Perry v. Block,* 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam) (internal quotation marks omitted). The agency bears the burden of justifying exemptions, "which are exclusive and must be narrowly construed."  *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015).  "FOIA cases are typically and

appropriately decided on motions for summary judgment." *E.g.*, *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

Federal courts may "rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry*, 684 F.2d at 126. Agency affidavits are entitled to a presumption of good faith, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and a court may grant summary judgment based on an affidavit if it contains reasonably specific detail and neither contradictory record evidence nor evidence of bad faith calls it into question, *see Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013).

## III.   ANALYSIS

### A.   Exemption 6

FOIA Exemption 6 seeks to "protect the privacy of individuals identified in certain agency records." *ACLU v. DOJ*, 655 F.3d 1, 6 (D.C. Cir. 2011). The provision covers "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 6 applies to "not just files, but also bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'" *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (quoting *Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 391 (D.C. Cir. 1987)).

To determine whether NIH properly withheld information under Exemption 6, a court must balance the privacy interests implicated by the records sought against the public interest in their disclosure. *See Judicial Watch*, 449 F.3d at 153; *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874, 879 (D.C. Cir. 1989). First, the Court determines whether disclosure of the private information "would compromise a *substantial*, as opposed to a *de minimis*, privacy interest." *Horner*, 879 F.2d at 874 (emphasis added). "The threshold requirement of a substantial privacy

4

interest is not very demanding." *Niskanen Ctr. v. Fed. Energy Reg. Comm'n*, 20 F.4th 787, 791 (D.C. Cir. 2021) (internal quotation marks omitted).  If a substantial privacy interest *is* at stake, the Court must weigh that interest against the "only relevant public interest," which is "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Jurewicz v. U.S. Dep't of Agriculture*, 741 F.3d 1326, 1332 (D.C. Cir. 2014) (internal quotation marks omitted).  Additionally, the Court must find that the agency has proven that it "reasonably foresees that disclosure would harm an interest protected by [that] exemption" or that "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A).

NIH properly withheld the names and titles of the two signatories of the Dhir Letter under FOIA Exemption 6.  Under step one of the Exemption 6 analysis, the Court finds that disclosure of the employees' identities would compromise more than a de minimis privacy interest because of the potential risk of harassment, threats, or injuries to the employees.  *See Judicial Watch*, 449 F.3d at 153 (a genuine risk of harassment or threats compromises a substantial privacy interest); *cf. SafeCard Servs.*, 926 F.2d at 1205.  NIH FOIA Coordinator Gorka Garcia-Malene attested that NIH withheld the employees' identities in order to avoid their "associat[ion] with fetal tissue procurement."  *See* Decl. of Garcia-Malene ¶ 18.  Garcia-Malene explained that federal agencies regularly withhold the names of staff "involved in sensitive research like animal and fetal tissue research," because agency staff have previously experienced "ongoing, unrelenting harassment of the staff by public interest organizations."  *Id.* ¶ 19.  The threats and harassment that arise from the association with controversial research poses significant risks to individuals' privacy, and courts regularly find that such risks justify withholding the identities of agency personnel.  *E.g.*, *Judicial Watch*, 449 F.3d at 152–53 (upholding redaction of FDA personnel involved in approving

the abortion pill mifepristone); *Ctr. for Med. Progress v. HHS*, 685 F. Supp. 3d 8 (D.D.C. 2023) (upholding redaction of NIH personnel involved in fetal tissue research), *vacated on other grounds and remanded*, 2024 WL 2262634, at *1.

   The Garcia-Malene declaration is both reasonably specific and reliable. Garcia-Malene's assertions are neither speculative nor conclusory, *see* Pl.'s Br. at 7–9, Dkt. 17. She provides specific, concrete examples of past serious threats, levied against both NIH staff involved in Covid research and staff at other institutions involved in fetal tissue research. *See* Decl. of Garcia-Malene ¶¶ 20–24. *See Judicial Watch*, 726 F.3d at 215 (summary judgment may be granted based on an agency affidavit containing "reasonable specificity of detail"). For example, Garcia-Malene highlights litigation involving fetal tissue research at Planned Parenthood, where personnel found it necessary hire bodyguards and physically relocate after the publication of videos highlighting their work. *Id.* ¶ 22 (citing *Planned Parenthood Fed'n of Am. v. Newman*, 51 F.4th 1125, 1132 (9th Cir. 2022)). It is reasonable and not unduly speculative to take such risks into account here, where comparable controversial research is involved. The Garcia-Malene declaration also does not rely on impermissible hearsay. *See* Pl.'s Br. at 10–11. An agency affidavit in response to a FOIA request is properly prepared by "the most appropriate person to provide a comprehensive affidavit," even if the affiant must rely on "partly second-hand" information. *SafeCard Servs.*, 926 F.2d at 1201. First-hand knowledge by the declarant is not required. *Id*. Courts routinely hold that "declarants in FOIA cases can rely on information obtained through inter-agency consultations without running afoul of hearsay rules." *Majuc v. DOJ*, 18-cv-566 (APM), 2022 WL 266700, at *3 (D.D.C. Jan. 28, 2022); *see also, e.g.*, *Energy Pol'y Advocs. v. EPA*, 2023 WL 6388879, at *5 n.9 (D.D.C. Sept. 29, 2023) (rejecting same hearsay argument). In sum, the Garcia-Malone

declaration sufficiently establishes that the NIH's employees' substantial privacy interests are at stake.

Under step two of the Exemption 6 analysis, Judicial Watch has not articulated a public interest sufficient to outweigh the substantial privacy interests at stake. As other courts have found, "no public interest is served by disclosure of the "names, email and/or mailing addresses, titles . . . and other personal information" of specific agency employees. *Nova Oculus Partners, LLC v. SEC*, 486 F. Supp. 3d 280, 290 (D.D.C. 2020) (upholding SEC's redactions of identifying information of SEC staff). The public "does not learn anything about what its government is up to" by gaining access to information about private citizens" that "reveals little or nothing about an agency's own conduct." *Id.* (quoting *DOJ v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 773 (1989)) (cleaned up). So too here. Disclosing the identities of the two signatories of the Dhir Letter would have minimal "incremental value" in shedding light on NIH's official activities. *See Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003). NIH has already released the grant application submitted by Dr. Dhir and identified the University of Pittsburgh official who led to project. *See* Def.'s Br. at 10. The additional disclosure of the letter signatories' names and titles would not, for example, reveal how the GUDMAP grants were administered, the amount of funding provided, how research was conducted, or whether grant recipients complied with state and federal law. Because the release of this additional information would shed minimal light on issues of public interest, the substantial privacy interests of the NIH employees are not outweighed.

Judicial Watch speculates that the two signatories of the Dhir letter might have been high-level NIH employees, who may have "had a conflict of interest or ties to" the University of Pittsburgh, and so had a hypothetical motive to conceal alleged persistent problems in GUDMAP grant renewals. Pl.'s Br. at 12–13. But there is nothing in the record to suggest, for example, that

7

any conflicts of interest plagued NIH's grant renewals or that inconsistencies with Progress Reports were a persistent phenomenon.  Nor are there any alleged conflicts of interest.  Absent evidentiary support, the Court will not credit such speculative theories.

HHS has also established that disclosure of the employees' identities would result in a reasonably foreseeable harm to the privacy interests protected by Exemption 6.  *See* 5 U.S.C. § 552(a)(8)(A).  A court may find the foreseeable-harm requirement satisfied if "the very context and purpose of' the withheld material 'make[s] the foreseeability of harm manifest." *Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 21 (D.D.C. 2021) (quoting *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 372 (D.C. Cir. 2021)); *see also Groenendal v. Exec. Off. for U.S. Att'ys*, 20-cv-1030 (DLF), 2024 WL 1299333, at *10 (D.D.C. Mar. 27, 2024) (identifying EOUSA employees foreseeably leads to "unwarranted invasion of their personal privacy" and "harassment or harm" under Exemption 6).  Here, the requirement is clearly met.  NIH withheld the identities of the employees in order to protect those individuals from harassment and threats.  *See* Decl. of Garcia-Malene ¶¶ 18–19, 22, 24.  The very context of that withholding highlights the foreseeable harm of the risks to the employees' privacy.  *See Amiri*, 664 F. Supp. 3d at 21.

Viewing the record as a whole, the Court concludes that NIH properly withheld the names and titles of the two signatories of the Dhir Letter under FOIA Exemption 6.  Any minimal public benefit of disclosing the NIH employees' names and titles does not outweigh the substantial privacy interests at stake.  Accordingly, the Court will grant HHS's motion for summary judgment and deny Judicial Watch's cross-motion for summary judgment.

### B.  Limited Discovery

Judicial Watch's motion for limited discovery will be denied because it has not shown bad faith on the part of HHS.  "Discovery in FOIA is rare and should be denied where an agency's

declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006) (cleaned up).  Limited discovery is generally permitted "only in exceptional circumstances where a plaintiff raises a sufficient question as to the agency's good faith in searching for or processing documents." *Cole v. Rochford*, 285 F. Supp. 3d 73, 76 (D.D.C. 2018). Judicial Watch's contention that HHS has engaged in "ethically questionable agency actions," Pl.'s Br. at 13 & n.15, based on its *sua sponte* concession of error in a separate action is unsupported. *Cf. Ctr. for Med. Progress*, 2024 WL 2262634, at *1.  HHS has further represented that the error had no effect on its production of documents in this case.  *See* Def.'s Status Rep. at 1, Dkt. 23. Because Judicial Watch cannot overcome the presumption of good faith, and because it cannot point to any remaining genuine factual dispute, the Court will deny its request for limited discovery.

## CONCLUSION

For the foregoing reasons, the Court grants HHS's motion for summary judgment and denies Judicial Watch's cross-motion for summary judgment.  A separate order accompanies this memorandum opinion.

August 23, 2024

DABNEY L. FRIEDRICH
United States District Judge